JUL  2 6 2007

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RICHARD DEEDS                     )
                                  )        3:06-cv-00282-LRH (VPC)
        Plaintiff,                )
                                  )
vs.                               )        **REPORT AND RECOMMENDATION**
                                  )        **OF U.S. MAGISTRATE JUDGE**
JIM BENEDETTI, *et al.*,           )
                                  )
        Defendants.               )        July 26, 2007
                                  )

        This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#21).

Plaintiff opposed (#37) and defendants replied (#39). The court has throughly reviewed the

record and the motions and recommends that defendants' motion to dismiss (#21) be granted in

part and denied in part.

## I. HISTORY & PROCEDURAL BACKGROUND

        Richard Deeds ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada

Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections

("NDOC") (#4). Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging

violations of his First and Eighth Amendment rights.[1]  *Id.*  Plaintiff names as defendants Jim

Benedetti, NNCC Associate Warden; Jackie Crawford, former NDOC Director; Theodore

D'Amico, former NDOC Medical Director; John Peery, NNCC Nursing Director; Glen Whorton,

former NDOC Director; John Doe #1, NNCC Pharmacist; and Jane Doe #2, NNCC nurse.[2]  *Id.*

---

[1] In count II, plaintiff also alleges a violation of his Fourteenth Amendment right to be "free of
arbitrary deprivation of care given other prisoners" (#4 at 5). Plaintiff does not allege that he was deprived
of care received by similarly situated inmates with Crohn's Disease; thus, plaintiff does not state a Fourteenth
Amendment claim for violation of his equal protection rights.

[2] On December 8, 2006, the court dismissed defendants Benedetti and Jane Doe #2 and count III (#6).
In January 2007, plaintiff voluntarily dismissed defendants Crawford and Whorton and count IV (#12, #16,

1    In count I, plaintiff alleges defendants D'Amico, Peery, and John Doe #1 violated his

2 Eighth Amendment right by repeatedly denying him treatment, including a special diet,

3 glutamine, and a prescription for Pentasa, for Crohn's disease. *Id.* at 4. In count II, plaintiff

4 alleges defendant D'Amico violated his Eighth and First Amendment rights by (1) denying

5 plaintiff permission to see an outside specialist for treatment of his Crohn's disease, and (2)

6 retaliating against plaintiff for filing a complaint with the Nevada Board of Medical Examiners

7 and a lawsuit. *Id.* at 5.

8    The court notes that the plaintiff is proceeding *pro se.* "In civil cases where the plaintiff

9 appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

10 of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

11 *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

12                              **II. DISCUSSION & ANALYSIS**

13    **A. Discussion**

14       **1. Motion to Dismiss Standard**

15    When considering a motion to dismiss for failure to state a claim upon which relief can

16 be granted, all material allegations in the complaint are accepted as true and are construed in the

17 light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.

18 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). "As a general rule, 'a district

19 court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"

20 *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*,

21 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*

22 *Clara*, 307 F.3d 1119 (9th Cir. 2002)). However, Rule 12 provides

23          If, on a motion asserting the defense numbered (6) to dismiss for
            failure of the pleading to state a claim upon which relief can be
24          granted, matters outside the pleading are presented to and not
            excluded by the court, the motion shall be treated as one for
25          summary judgment and disposed of as provided in Rule 56, and all
            parties shall be given reasonable opportunity to present all material
26          made pertinent to such a motion by Rule 56.

27  ─────────────────────

28 and #17).

2

1  Fed.R.Civ.P. 12(b)(6). Notwithstanding this rule, "a motion to dismiss is not automatically

2  converted into a motion for summary judgment whenever matters outside the pleadings happen

3  to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th

4  Cir. 1983). A motion filed with extraneous materials is to be treated as a motion for summary

5  judgment only if the court relies on the material. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44

6  (9th Cir. 2003). Conversion to summary judgment is at the discretion of the court and the court

7  must take some affirmative action before conversion is effected. *Id.* at 1144.

8  ### 2. Summary Judgment Standard

9  Summary judgment allows courts to avoid unnecessary trials where no material factual

10  disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

11  Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in

12  dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C).

13  In deciding whether to grant summary judgment, the court must view all evidence and any

14  inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*

15  *v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

16  [d]istinguish between evidence of disputed facts and disputed

17  matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence

18  regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

19

20  *Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ

21  on the material facts at issue, however, summary judgment should not be granted. *Anderson v.*

22  *Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

23  The moving party bears the burden of informing the court of the basis for its motion, and

24  submitting evidence which demonstrates the absence of any genuine issue of material fact.

25  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

26  the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

27  must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477

28  U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for

3

discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Analysis

Both plaintiff and defendants submit evidence with their motions. Since the court relies on this evidence in making its determination, the court converts defendants' motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

#### 1. Count I

##### (a) Law

The Eighth Amendment prohibits cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). To succeed on a claim alleging failure to provide medical care, an inmate must meet both an objective and subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious medical need," the objective standard, exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

The subjective standard requires a showing that prison officials were "deliberately indifferent" to an inmate's safety. *Id.* This prong is satisfied by demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Palmer*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*citing McGuckin v. Smith*,

---

[3] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued a *Klingele* order on February 9, 2007 (#24).

4

974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096 (*citing McGuckin*, 974 F.2d at 1059 and *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)). However, "mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin*, 974 F.2d at 1059. While a finding that the defendant's activity resulted in "substantial harm" is not necessary, "such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096.

### (b) Analysis

Plaintiff alleges that Pentasa is a medication prescribed to treat Crohn's Disease, and that "[b]eginning about December of 2004, I was repeatedly and for lengthy periods of time denied the medicine 'Pentasa'" (#4, pp. 4-5). Plaintiff additionally alleges that he was denied "glutamine" and a special prescribed diet. *Id.*

It is uncontested that in 2001 plaintiff saw an outside physician, Dr. Yamamoto, concerning his condition (#4 at 5; #21/23 Exhibit A, p. 7-8 (*sealed*)). Dr. Yamamoto recommended a special diet, glutamine, and Pentasa because plaintiff has only three feet of small intestine remaining, which makes digestion difficult. *Id.*

Defendants present evidence that plaintiff's Pentasa was delivered on: August 28, 2004, September 19, 2004, October 19, 2004, December 6, 2004, January 26, 2005, March 15, 2005, May 9, 2005, June 9, 2005, August 18, 2005, September 17, 2005, October 29, 2005, November 5, 2005, December 27, 2005, January 14, 2006, February 10, 2006, March 29, 2006, August 1, 2006, and September 12, 2006 (#21/23 Exhibit A, pp. 1-3 (*sealed*)). Pentasa is a "keep-on-person" ("KOP") medication, and is dispensed in thirty-day supplies. *Id.* The prescription records also demonstrate the amount of time between the time the prison ordered the medication, and the date the prison received the medication from the pharmacy. *Id.* Defendants admit there were some unacceptable lag times in filling plaintiff's prescription requests and acknowledge that

1   this is an ongoing issue within the NDOC system; however, defendants contend that plaintiff has

2   not shown that any harm resulted from the length of time it took to fill his prescriptions (#21 at

3   6). Plaintiff's medical records additionally indicate that plaintiff did not receive glutamine due

4   to cost (#21/23 Exhibit A, p. 8 (*sealed*)). Defendants also submit conflicting evidence as to

5   whether plaintiff received a special diet. *Compare id.*, p. 8 (no special diet because there is no

6   nutritionist in the culinary) *with id*, p. 10 (plaintiff received a special 6,000 calorie per day diet).

7   Defendants assert that regardless of what plaintiff received, the glutamine and the special diet

8   were only Dr. Yamamoto's "suggestions," not "prescriptions" or "orders (#21 at 6).

9          Plaintiff's position is that defendants' evidence is misleading because although it outlines

10  the date that prison medical ordered his medication and when it was delivered by the pharmacy,

11  the evidence does not indicate when plaintiff initially put in the prescription request (#37 at 27).

12  Plaintiff argues that the amount of time he was without his medication was much longer than

13  defendants set out in their chart on pages 2-3 of their motion. *Id.* Moreover, plaintiff asserts that

14  defendants have consistently withheld his medical records from him, although he admits he

15  reviewed his records in 2006 pursuant to a court order in another case. *Id.* Plaintiff also

16  maintains that because he does not have copies of the *in camera* documents defendants submitted,

17  he cannot respond to defendants' assertions that he received his medication.[4] *Id.*

18         There is evidence that demonstrates that plaintiff received Pentasa between August 2004

19  and September 2006 on what appears, at times, to be a sporadic basis (#21/23 Exhibit A, pp. 1-3

20  (*sealed*)). Neither party has submitted plaintiff's medical records,[5] although plaintiff contends

21  he suffered as a result of not receiving his medication on time (#37, pp. 9-10. Defendants submit

22  no evidence to support their claim that plaintiff has not suffered harm from the delays in receiving

23  his medication, although this is their burden as the moving party. Nor does the court have before

24

25  _____

26  [4] Defendants submit evidence that plaintiff reviewed the *in camera* submission in March 2007 pursuant to the order of this court (#34). It appears that plaintiff was allowed to review the documents for twenty-seven minutes. *Id.*

27

28  [5] Plaintiff's evidence, which is not helpful in resolving his claims, consists of "Employee Work Performance Standards Forms" for defendants D'Amico and Peery (#37, Exhibits A and B).

1    it information which demonstrates that plaintiff was not required to have glutamine or a special

2    diet. Without such evidence, the court cannot assess whether plaintiff's claims of pain and

3    suffering are credible, or whether the defendants caused such harm by admitted delays in

4    treatment. Because it cannot grant summary judgment to defendants based solely on the evidence

5    before it, the court denies summary judgment as to count I.

6        **2. Count II**

7        **(a) Denial of Access to Physicians**

8        In count II, plaintiff alleges that defendant D'Amico violated plaintiff's Eighth

9    Amendment right when he refused plaintiff access to private physicians for treatment of

10   plaintiff's Crohn's disease (#4 at 5). The denial of access to medical care is evaluated under the

11   deliberate indifference standard discussed above.

12       Plaintiff admits he sued Dr. Spector, a former prison doctor at NNCC, in 1998 and filed

13   a complaint with the Board of Medical Examiners against Drs. Taylor and McAffee, NNCC's

14   contract gastroenterologists. *Id.* Defendants' evidence indicates that as a result, Drs. Taylor and

15   McAffee refused to treat plaintiff (#21/23 Exhibit A, p. 7 (*sealed*)). Dr. Yamamoto was the next

16   choice because he had previously treated plaintiff. *Id.* Dr. Gedney, plaintiff's NNCC treating

17   physician, requested a consultation on plaintiff's behalf. *Id.*

18       Plaintiff alleges that defendant D'Amico denied this consultation (#4 at 5). Plaintiff bases

19   his claim on Dr. Gedney's alleged statement that the denial of plaintiff's request for a consultation

20   "was a continuing response to my 'lawsuit' by Nevada Department of Corrections Medical

21   Director Theodore D'Amico." *Id.*

22       Contrary to plaintiff's assertions, the evidence clearly reveals that Dr. Gedney's request

23   for referral to an outside physician was approved (#21/23 Exhibit A, p. 7 (*sealed*)). The unrefuted

24   evidence additionally indicates that plaintiff was not able to see Dr. Yamamoto because the

25   doctor's office staff was afraid of plaintiff. *Id.*, pp. 7-8; Exhibit B (*sealed*). Dr. Gedney

26   attempted to arrange a phone consultation, but it was not feasible (Exhibit B, p. 10 (*sealed*)). Dr.

27   Gedney admits that she informed plaintiff that Drs. Taylor and McAffee refused to see him

28   because of the prior "lawsuits" he had filed against them, but states that "[a]t no time did I

7

1    indicate to Inmate Deeds that Dr. D'Amico or any other NDOC medical personnel, was retaliating

2    against Inmate Deeds because of his legal activities against private physicians." *Id.*, pp. 9-10.

3    Plaintiff fails to present any evidence to the contrary.

4         The court concludes that the undisputed evidence indicates that defendant D'Amico did

5    not deny plaintiff access to private physicians or act with deliberate indifference to plaintiff's

6    medical needs.  The court grants summary judgment on plaintiff's count II Eighth Amendment

7    claim.

8                              **(b) Retaliation**

9         Plaintiff also alleges in count II that defendant D'Amico denied plaintiff permission to see

10   a private physician in retaliation for plaintiff's past legal actions (#4 at 5).  As with his Eighth

11   Amendment claim, plaintiff bases his retaliation claim on Dr. Gedney's alleged statement. *Id.*

12        Prison officials may be sued under Section 1983 for retaliating against a prisoner for

13   exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir.

14   1995).  A retaliation claim involves five elements: "(1) An assertion that a state actor took some

15   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

16   such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

17   not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

18   2004).

19        As the court discussed above, the evidence demonstrates that defendant D'Amico did not

20   deny plaintiff a consultation with an outside physician; in fact, such a visit was approved.  Dr.

21   Gedney's affidavit reveals that the outside physicians declined to see plaintiff of their own

22   volition.  Plaintiff presents no evidence to the contrary.  Since the undisputed evidence indicates

23   that defendant D'Amico did not take any adverse action towards plaintiff, the court grants

24   summary judgment on plaintiff's count II retaliation claim.

25   ///

26   ///

27   ///

28   ///

                                        8

## III. CONCLUSION

Based on the foregoing, the court concludes that:

- There is not adequate evidence before the court that plaintiff did not suffer harm as a result of the delays in receiving his medication over a two-year period; therefore, the court denies defendants' motion to dismiss as to count I;

- Plaintiff's count II Eighth Amendment claim for denial of access to private physicians must be dismissed because the undisputed evidence indicates that defendant D'Amico granted plaintiff access to private physicians who, of their own volition, refused to see plaintiff; and

- Plaintiff's count II retaliation claim must be dismissed, because the undisputed evidence indicates that defendant D'Amico took no adverse action against plaintiff.

As such, the court recommends that defendants' motion to dismiss (#21) be **GRANTED** as to count II and **DENIED** as to count I.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#21) be **GRANTED** as to count II and **DENIED** as to count I.

**DATED:** July 26, 2007.

UNITED STATES MAGISTRATE JUDGE